## J. N. STEWART v. M. E. FOWLER, *et al.*

1. PAROL CONTRACT, *Court to Explain.*   Where two parties make a parol contract and they disagree about its terms, it is the duty of the court in an action arising thereon to explain to the jury, when requested, the legal effect of each party's recollection of the terms of the same.

2. SALE, *to Earn Commission.*   Where a contract for a commission for the sale of land provides that the land must be sold to a person ready, willing and able to buy, it is not enough that there has been a contract to sell made.   There must have been a sale before the commission is earned.

3. CONTRACT *to Sell, Not a Sale.*   Where S. and N. make a contract about the conveyance of the farm of S. to N., who pays a certain sum in cash and agrees to pay a further sum at a future time, and execute a mortgage for the balance of the purchase-price, at which time S. agrees to make a deed to the farm and give possession of the same, and at the same time it is further agreed that if N. fails to pay the further sum of money and execute the mortgage, then the money already paid shall be forfeited to S., *held,* such an instrument is a contract to sell, and not a sale itself.

*Error from Shawnee Superior Court.*

ACTION to recover a commission for selling land.   Trial at the June Term, 1885.   Verdict and judgment for plaintiffs, *M. E. Fowler & Co.,* for $500.   The defendant, *Stewart,* brings the case here.   The material facts are stated in the opinion.

*Overmyer & Safford,* for plaintiff in error.

*Welch & Welch,* and *S. S. Lawrence,* for defendants in error.

Opinion by HOLT, C.: The defendants in error, plaintiffs below, brought their action against plaintiff in error in the superior court of Shawnee county, for their commission for selling lands for defendant. They alleged that they were real-estate agents; that the defendant came to them in the spring of 1884, and placed his farm in their hands for sale. The agreement entered into between the parties was not in writing, and the parties differ in regard to its terms. The plaintiffs claim that if they should procure a purchaser ready, willing and able to buy, that they would receive a commission of five per cent. upon the price for which the land should be sold. The defendant stated that he placed the farm in their hands to sell; that he was to pay them a commission of five per cent. when a sale was made to a person willing and able to pay for the same. Sometime in October of that year, M. J. Riley, one of the plaintiffs, took a man by the name of Neiswinder, a stranger, to the house of the defendant, to show him the land. Defendant states that Riley told him he had found out that Neiswinder wanted a farm, and was able to buy, and had brought him over for the purpose of making a trade; that he had "looked him up," and he was worth $25,000. He said this statement was made to him in the absence of Neiswinder. Riley testified, however, that Neiswinder and Stewart talked over the financial standing and ability of Neiswinder to pay, and after investigation Stewart seemed to be satisfied that he was able to pay for the farm. An agreement was entered into that day, by which Neiswinder paid Stewart $350 in hand, and the next day it was reduced to writing in the office of plaintiffs in Topeka. By that agreement Neiswinder was to pay Stewart $650 in addition to the $350 already paid, and on the 17th day of February following was to pay the further sum of $4,000 in cash, give security by first mortgage on the property for $5,000, due in

three years at eight per cent.; and upon the payment of the money and the execution of the mortgage, Stewart was to give a deed to the place, and give him the possession thereof on the 1st day of March following. The $650 was paid, but there was no further payment made, nor demand for a deed by Neiswinder of Stewart, nor any demand by Stewart for the $4,000 or the execution of the mortgage.

The first complaint of defendant is as to the ruling of the court excluding a letter written by Neiswinder to Stewart in regard to the payment for the land. There is no offer to show the contents of the letter, and we are left to presume what it contained; we would not be justified in presuming that an ordinary business letter written by Neiswinder to this defendant could have been competent and relevant evidence in this action between the agents of the defendant and the defendant himself.

The defendant claims there was error in the charge given by the court to the jury. We do not find any exception taken to the general instructions or any part thereof. The defendant, however, offered three instructions, which were refused. We shall examine the instructions given only for the purpose of seeing whether the instructions asked and refused were given elsewhere in substance by the court. The first instruction asked by defendant and refused by the court is:

"If the plaintiffs agreed and undertook to sell the defendant's farm for a commission upon the price realized, then in order to earn their said commission it must appear by a preponderance of the evidence that they effected a sale of the farm to a party ready, willing and able to perform the conditions of the sale. The mere procuring of a person to enter into a contract to purchase the land unless such purchaser was ready, willing and able to make the cash payments named in the contract, and to make the mortgage therein named for the deferred payments, would not be sufficient to entitle the plaintiffs to their commission."

We think that instruction ought to have been given under the testimony of the defendant about the terms of his agreement with plaintiffs, unless he had in some manner waived

his rights by entering into a sale with Neiswinder. This necessitates an examination of the contract entered into between Stewart and Neiswinder on the 25th day of October, 1884. The contract is substantially as follows: This agreement, made and entered into this 25th day of October, 1884, by and between J. N. Stewart and Reuben Neiswinder, witnesseth: That said party of the first part, for the consideration hereinafter mentioned, covenants and agrees to sell unto the said party of the second part, his heirs and assigns, the following property: [Here follows description.] The considerations and conditions of this agreement are as follows, to wit: The party of the second part is to pay in full consideration for said premises the sum of ten thousand dollars, in the manner and upon the conditions hereinafter expressed, to wit: three hundred and fifty dollars cash in hand; the further sum of six hundred and fifty dollars in notes secured by first mortgage, fifteen days from date; the further sum of four thousand dollars cash, to be paid on or before the 17th day of February, 1885; the further sum of five thousand dollars to be secured by mortgage on said premises, and held by said Stewart for three years, to draw eight per cent. interest, payable semi-annually; the said party of the first part to give possession on March 1, 1885, upon compliance with the within agreement. In consideration of which, said party of the second part covenants and agrees to pay unto said party of the first part for the same the sum of ten thousand dollars, as follows, in the manner and within the time and with the interest as herein above mentioned and specified. . . . If default be made in fulfilling this agreement or any part thereof, by or on behalf of said party of the second part, this agreement shall, at the option of the first party, be forfeited and determined, and said party of the second part shall forfeit all payments made by him on the same; and such payments shall be retained by said party of the first part in full satisfaction of all damages by him sustained, and he shall have the right to enter and take possession of said premises.

Was this a contract to sell, or was it a sale within itself?

Certainly it was not a conveyance; at most it was only a contract to convey by deed, when Neiswinder should perform certain conditions specified in the agreement. There was something to be done by each party before there could be a completed sale; Neiswinder was to pay in the future a definite sum of money, and execute a mortgage upon the land; and on the other hand the defendant, upon the payment of the money and the delivery of the mortgage, should execute a deed and give possession of the farm to him. There was, however, a part of the consideration named in the contract paid in cash at the time it was entered into; whatever effect such payment would ordinarily have in contracts relating to real estate, we think the conditions in this agreement about the payments made by Neiswinder show clearly the intentions of the parties. It is therein provided that if Neiswinder should fail to pay the $4,000, and execute the mortgage, then all payments made by him should be retained by the defendant in satisfaction and liquidation of all damages he had sustained. We think this provision of the agreement was decisive of its character. It was a contract to sell.

3. Contract to sell, not a sale.

It appears by the evidence in this case that it has been treated by the parties thereto as a contract to sell, rather than a sale. No sale having been made, it would follow, if the defendant's statement of the contract for commission between himself and plaintiffs were true, that he had the right to insist that at the time specified

2. Sale, to earn commission.

for the sale, to wit, on the 17th day of February, 1885, Neiswinder should have been ready, willing and able to purchase the farm of defendant. It might fairly be inferred from the evidence, that he was unable to buy at that time. His ability to pay should have been shown affirmatively; the burden was upon the plaintiff to establish it.

In view of the conflict of evidence about the terms of the contract for a commission, this instruction should have been given. The defendant was entitled to have his theory of the action, when supported by material testimony, fairly presented in the instructions given by the court. It was a

matter of vital importance to him, for if his version of the contract was correct, then the instruction refused stated the controlling rule of law in the case. The court did not elsewhere give an instruction embodying it in substance; on the other hand, it did instruct the jury that the agreement between defendant and Neiswinder was a sale, and not a contract to sell. If it had been a sale, then defendant in making it would have waived the question of the ability of Neiswinder to pay, and this instruction would have been properly refused; but if it was a mere contract to sell, there would have been no waiver by defendant, and the question of what the contract for a commission was should have been determined by the jury under proper instruction of the court.

1. Parol contract, court to explain.

It is recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.