dict, invested at 5 per cent., would amount to $625. I believe the plaintiff can earn considerably more than the difference between these two sums. It seems to me that the verdict is somewhat excessive under the principles stated in O'Donnell v. Am. Sugar Refining Co., 41 App. Div. 307, 310, 58 N. Y. Supp. 640, where plaintiff lost his right hand, and the verdict was reduced from $25,000 to $15,000 by the trial justice, and was further reduced by the Appellate Division to $10,000. I think $10,000 would be more nearly in accord with the amounts ordinarily awarded by juries for similar injuries. See Sesselmann v. Met. St. Ry. Co., 76 App. Div. 336, 339, 78 N. Y. Supp. 482.

The motion for a new trial will therefore be granted, on condition that defendant pay the costs of this trial, unless plaintiff consents to a reduction of the verdict to $10,000. If he so stipulates, the motion will be denied.

---

## VAN VARICK v. SUBURBAN INV. CO.

(Supreme Court, Trial Term, Kings County. May 3, 1912.)

1. BROKERS (§ 56*)—COMPENSATION—WHEN EARNED.

An owner of real estate who employs a broker to negotiate a sale thereof may not escape paying the commission on the ground that the customer produced by the broker was unable to pay for the premises, where he accepted the customer as satisfactory, and conveyed the premises to him.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 85–89; Dec. Dig. § 56.*]

2. BROKERS (§ 52*)—COMPENSATION—WHEN EARNED.

A real estate broker is entitled to his commission where he produces a purchaser satisfactory to his principal, and with whom the principal makes an enforceable contract, without being induced so to do by any representation of the broker as to the ability of the proposed purchaser to perform, and without any bad faith on the part of the broker, though the purchaser fails to perform because of financial irresponsibility at the time of making the contract, but this rule does not apply where the broker as a part of his employment assumes to execute for his principal an executory contract of sale, in which case he is not entitled to commission, unless the purchaser procured is able to perform.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 73; Dec. Dig. § 52.*]

3. CONTRACTS (§ 71*)—COMPENSATION—WHEN EARNED.

A contract for the employment of a broker to sell real estate, which stipulates that he shall receive for commission 30 per cent. of the price as fixed by the owner, that he shall receive such commission whether the tracts are actually sold by him or by any other, that, where tracts are sold on the installment plan, out of each installment the broker shall receive 60 per cent. until the total amount of his commissions are paid, gives to the broker a commission on all sales of 30 per cent. where the full price is paid either in cash or by installments, and on all sales where at least 50 per cent. of the price is paid, and he is entitled to 60 per cent. of the amount of installment payments not equaling 50 per cent. of the price, though purchasers making contracts with the owner are unable to pay the price.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 295, 296, 298, 316–324, 327; Dec. Dig. § 71.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Peter Van Varick against the Suburban Investment Company. Judgment for plaintiff.

Wilmot L. Morehouse, for plaintiff.
Albert W. Linton, for defendant.

BENEDICT, J. This action, tried before the court, a jury being waived, was brought to recover a balance alleged to be due to the plaintiff for commissions upon the sale of certain real property belonging to the defendant corporation, under the provisions of an agreement in writing between them, bearing date March 7, 1907. By the terms of this agreement, plaintiff was constituted the sole selling agent of 'the defendant in respect of a tract of land divided into a large number of lots, situate at Bellport, Long Island, and it was stipulated that the plaintiff should receive for commission and compensation 30 per centum of the purchase price of vacant or unimproved land, and 5 per centum of the purchase price of improved real estate, such price to be set and fixed by the defendant corporation, and that the plaintiff should be entitled to such commission or compensation whether the lots were actually sold by him or by any other person. The contract contained the further provision that the plaintiff should not incur any indebtedness for which the defendant should be held responsible, but the defendant agreed to provide for advertising sales, railroad excursions, and other methods of bringing the property to the attention of the public. The plaintiff further stipulated that he would hire and pay his agents employed to effect sales, and the defendant should not be liable in any way to such agents, that, as soon as he should receive money out of sales, he would turn the same over to the defendant, and should not incur any debt or obligation for which the company would be liable. He further agreed that he would by October 1, 1907, sell at least $10,000 worth of the property referred to, and the company agreed that, in case he should accomplish this result, then the contract would be extended for the further term of two years unless all of the lots should have been previously sold. If, however, he should not, prior to the date first mentioned, have succeeded in effecting sales to the amount mentioned, then the company had the option of terminating the contract. It was conceded upon the trial that the plaintiff had effected sales to the required amount prior to October 1, 1907; thus entitling him to the stipulated extension of two years. It was also shown by the testimony that all the land sold was unimproved property upon which, as above noted, the agreed commission was to be 30 per centum. It further appeared in evidence that the method of transacting business under this contract was for the plaintiff, after having secured a deposit from intending purchasers, to take or send them to the office of the defendant where a written contract in the form shown by "Defendant's Exhibit 2" was prepared, and this contract was either signed in duplicate at the office by the purchaser, or given to the plaintiff to obtain the signature thereon, returning one copy to the defendant, and allowing the purchaser to retain the other copy.

The plaintiff contends that he became entitled to a commission at the stipulated rate of 30 per centum upon the total contract price in each case as soon as the sale was approved by the defendant and a contract was executed by it with the intending purchaser, and this without regard to the question whether the purchaser subsequently became unable or unwilling to complete the contract, and failed to pay all of the installments of purchase money therein called for.

The defendant on the other hand, however, contended upon the trial that it was responsible only for commissions based upon the amounts which the several purchasers actually paid on account of their contracts, and therefore that, if the contracts were not fully completed by the purchasers, it was responsible to the plaintiff only for commissions at the stipulated rate upon the amounts actually received by it from the purchasers. The basis of this claim is found in that provision of the contract which reads as follows:

"Where lots are sold on the instalment plan out of each instalment the said Van Varick shall receive sixty (60) per cent, until the total amount of his commissions are paid."

The question thus presented must be determined by reference to the provisions of the contract itself. This action was not brought by plaintiff to recover damages against the defendant upon the theory of quantum meruit for arbitrarily discharging him, or preventing him from carrying out the terms of the contract on his part, as was the case in Bathrick v. Coffin, 13 App. Div. 101, 43 N. Y. Supp. 313, and other similar authorities. He stands upon the contract, and seeks to recover commissions at the stipulated rate upon the full contract price of sales effected by him.

[1] The general rule respecting the broker's right to commissions where the purchaser procured by him is financially unable to perform his contract is clearly pointed out in Travis v. Graham, 23 App. Div. 214, 48 N. Y. Supp. 736, where the court held that the owner of real estate who employed a real estate broker to negotiate the sale of his land could not escape paying the broker's commission on the ground that the customer produced by the broker was not able to pay for the premises, where he had accepted the purchaser as satisfactory and conveyed the premises to him. The court said that the broker undertakes to bring the minds of the seller and buyer together in an agreement to sell and purchase, wherein the price and terms should be satisfactory to both. There can be no more conclusive evidence that he has done this than the execution and delivery of the deed to the land by the seller to the purchaser.

[2] Following this doctrine, it has been held that the broker, under a general contract of employment for the sale of real estate, is entitled to his commission where he produces a purchaser satisfactory to his principal, and with whom the principal makes an enforceable contract of purchase and sale without being induced so to do by any representation of the broker as to the ability of the proposed purchaser to perform the contract, and without any bad faith on the part of the broker, although without any fault of the principal the purchaser afterwards fails to perform the contract, solely because of the lack

of sufficient financial responsibility at the time of the making of the contract. See Alt v. Doscher, 102 App. Div. 344, 92 N. Y. Supp. 439, affirmed, on opinion of the lower court, in 186 N. Y. 566, 79 N. E. 1100. To the same effect are Brady v. Foster, 72 App. Div. 416, 75 N. Y. Supp. 994, and Heinrich v. Korn, 4 Daly, 74. The authorities in other states are to the same effect. See Wray v. Carpenter, 16 Colo. 271, 27 Pac. 248, 25 Am. St. Rep. 265; Shainwald v. Cady, 92 Cal. 83, 28 Pac. 101; Parker v. Estabrook, 68 N. H. 349, 44 Atl. 484; Hancock v. Dodge, 85 Miss. 228, 37 South. 711; Morgan v. Keller, 194 Mo. 663, 680, 92 S. W. 75; Crane v. Eddy, 191 Ill. 645, 61 N. E. 431, 85 Am. St. Rep. 284; Bankers' Loan Investment Co. v. Spindle, 108 Va. 426, 62 S. E. 266; Greene v. Hollingshead, 40 Ill. App. 195. An early case in Kansas (Stewart v. Fowler, 37 Kan. 677, 15 Pac. 918), to the contrary effect, was disapproved when the case was again before the court in 53 Kan. 537, 36 Pac. 1002.

[3] In the case at bar the contracts were in no instance signed and executed by the broker on behalf of his principal, but invariably by the principal; and therefore the distinction in that regard pointed out in Inge v. McCreery, 60 App. Div. 557, 69 N. Y. Supp. 1052, is inapplicable. In that case it was said that the doctrine above stated does not apply where the broker as a part of his employment assumes to execute for his principal an executory contract of sale. Under such circumstances, he is not entitled to his commission, unless the other contracting party is able to perform the contract on his part.

Under these authorities, there can be no doubt that the plaintiff would be entitled to commissions upon the principal sums named in all contracts executed by the defendant with intending purchasers, whether such contracts were finally paid out in full or not, unless a different rule can be found within the limits of the contract sued on. The only warrant for the defendant's contention that this case furnishes an exception to the general rule governing such cases is found in the clause of the contract which has been quoted, whereby it is provided that the plaintiff shall receive "sixty per cent." of each installment of the purchase price in the case of installment sales until the total amount of his commissions are paid. This provision of the contract is somewhat indefinite, and the contract itself is loosely drawn in many particulars. Contracts of this kind should be, and usually are, drawn with sufficient care, where the parties so intend, to provide that the broker shall not be entitled to commissions upon installments of the purchase price which the vendor does not receive by reason of default on the part of the purchaser. No such provision is contained in this contract in express terms. It must be spelled out, if at all, from the provision above quoted. In my opinion the plaintiff's contention that these words refer only to the method of paying the commission upon installment sales is not warranted. The intention of the parties must be presumed to have been that, in the case of installment sales, the commission should be paid only out of installments actually received, and that instead of an immediate pay-

ment of the commission at the stipulated rate, as where sales were made for cash, the parties intended that the plaintiff should be entitled to draw on account of the 30 per centum commission upon the selling price sums equal to 60 per centum of each installment until the full commission had been paid to him. This construction is the only one which gives effect to the provision of the agreement which has been quoted, and this construction finds some support in similar cases in other states, although I have not been able to find, nor have I been referred to, any case precisely in point, either in the English courts or in those of this state. See Holbrook v. Investment Company, 30 Or. 259, 47 Pac. 920; Murray v. Rickard, 103 Va. 132, 48 S. E. 871.

I therefore conclude that the plaintiff is entitled to a commission at the rate of 30 per centum upon all sales where the full purchase price was paid, either in cash or by installments, and upon all sales where at least 50 per centum of the purchase price was paid, and that he is entitled to 60 per centum of the amount of installment payments where such installments did not equal 50 per centum of the purchase price. The court has been compelled itself to tabulate and compute these several amounts from the agreed statement submitted. They are as follows:

| | | |
|---|---|---|
| Cash payments.................................... | $4,809 50 | |
| Commissions, 30 per cent........................... | | $1,442 85 |
| Installments paid in full.......................... | 1,610 50 | |
| Commissions, 30 per cent........................... | | 483 15 |
| Contracts where 50 per cent. or more of the purchase price was paid................................. | 2,212 50 | |
| Commissions, 30 per cent. of the purchase price........ | | 663 75 |
| Amounts collected on contracts where less than 50 per cent. of the purchase price was paid................. | 1,812 50 | |
| Commissions (60 per cent. of payments).............. | | 1,090 50 |
| Total commissions........................... | | $3,680 25 |

From this there should be deducted the following sums:

| | | |
|---|---|---|
| Amounts paid to plaintiff on account of his commissions | $2,421 58 | |
| Amount of admitted counterclaims.................... | 422 50 | |
| Commissions paid to plaintiff's subagents with his consent ......................................... | 593 50 | $3,437 58 |
| Balance due plaintiff.......................... | | $ 242 67 |

with interest from June 1, 1909, for which amount I direct judgment in favor of the plaintiff.

Present findings accordingly.

