STATE OF NORTH DAKOTA, Respondent, v. KARL LUITHLE, Jr., Appellant.

(221 N. W. 885.)

317

Opinion filed November 10, 1928.

*Crawford, Cain & Burnett,* for appellant.

*J. K. Murray,* State's Attorney, for respondent.

BURR, J. The jury in this case found the defendant to be the father of the child born to the complaining witness, and from the order and judgment based on the verdict the defendant has appealed.

There are four specifications of error, some of which are subdivided; but the two main points urged are that the "verdict is contrary to the law and clearly against the evidence," and that the court erred in its instructions to the jury, particularly with reference to the burden of proof.

The court gave the jury instructions with reference to a sealed verdict and in accordance therewith a sealed verdict was rendered and the jury permitted to separate. After the sealed verdict was opened and read it was found the verdict had not been dated. The court had the foreman date and sign the verdict that had been returned, and the record shows that thereafter when the verdict was read, the jury was required to state whether this was the verdict. The response was unanimous in the affirmative. This action of the court is said to be error. It is well established in this state that proceedings to determine the paternity of a child, formerly known as bastardy proceedings, are governed by the rules applicable to appeals in civil cases. State v. Southall, 50 N. D. 723, 197 N. W. 866; State v. Brunette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340. Section 7629 of the Compiled Laws of this state makes provision for a sealed verdict being returned in civil actions. There is no error in this respect. The dating of the verdict is not essential and the jury may decide a case in court, without retiring. See § 7625 of the Comp. Laws.

The allegation of misconduct of the jury was not argued and it is therefore deemed abandoned.

The complaining witness gave birth to a child September 8, 1927. She made complaint August 1, 1927 and therein stated that the child was begotten "on or about the 15th day of March, 1927." She testified to a series of acts of intercourse beginning on or about the 13th of January 1927. The doctor who confined her testified that the child was premature; that he examined her about "four or five months possibly six months" prior to the confinement and that she was at that time advanced in pregnancy three or four months. He testified however, that he kept no record of the date she was in the office; but the undisputed testimony of the complaining witness and of her father was to

the effect that she was in the office in June. The complaining witness testified positively that not only was the defendant the father of her child but that she never had intercourse with any other person at any time. The evidence of the defendant shows he was in her company at times, but he denies being in her company at the time she stated. The defendant and the complaining witness are cousins. The evidence would indicate that there was the usual visitation back and forth between the families, who lived in practically the same neighborhood. The defendant vigorously denied any act of intercourse. Thus there was complete conflict betwene the two of them as to the truth. There was evidence introduced by the state tending to show statements in the nature of admissions by the defendant of intercourse to the effect that he was "free" from this charge because of the dates which he had marked down. There is a denial by the defendant and his witnesses. The defendant produced evidence tending to show the complaining witness had sexual intercourse with a young man by the name of H. Both H. and the complaining witness deny this and testimony was introduced showing that one witness who claimed to have seen one act of intercourse had denied he ever saw it or stated he had seen it. In other words there was evidence on the part of the state showing the defendant to be the father of the child and evidence on the part of the defendant denying it.

There is nothing to indicate the complaining witness or anyone else attempted to extort money from the defendant or compel him to do anything about the matter except acknowledge paternity. It is true the girl said she was willing to marry the defendant, but this was in response to a question asked her by the defendant's father when he went to interview her after hearing of the charge. We presume the parties knew they could not marry in this state, though there is nothing in the evidence on this matter, one way or the other. If the complaining witness were "framing" anyone, it is just as reasonable to believe she would "frame" H. whom she could marry rather than her cousin whom she could not marry. The jury found in favor of the version given by the state and there is sufficient evidence to support the verdict.

The defendant alleges the court erred in charging the jury as follows:

"On the other hand if you find by a fair preponderance of the evidence that the defendant, Karl Luithle, is not the father of the child

conceived and begotten within the period of gestation, then you will find for the defendant."

This instruction standing alone might appear to be erroneous, as placing the burden of proof improperly. However, this is but an excerpt from the charge. The court had charged the jury that the state "must prove to the satisfaction of the jury by a fair preponderance of the evidence each and every material allegation contained in the complaint, etc." Among the material allegations stated by the court as required to be so proved was that the defendant "is . . . the father of the child" born.

Again the court stated:

"On the other hand if the state has failed to prove to your satisfaction by a fair preponderance of the evidence that the defendant, Karl Luithle, Junior, is the father of the child; then the state has failed to prove its case and you should find for the defendant herein."

Again the court said:

"Therefore, gentlemen of the jury, if you find that the defendant did have sexual intercourse with the said Bertha Luithle, the complaining witness herein on or about March 15, 1927 . . . and if you further find that the defendant is the father of the child born . . . and if you further find . . . that the child was conceived and begotten within the period of gestation then you will find a verdict for the plaintiff. On the other hand if you find by a fair preponderance of the evidence that the defendant Karl Luithle is not the father of the child conceived and begotten within the period of gestation, then you will find for the defendant."

This latter portion is the one criticized. The court properly defined "preponderance of evidence," and submitted two forms of verdict one finding the defendant "to be the father of the child" and the other finding the defendant "not to be the father of the child born to the complaining witness." It is clear the state was required to prove the defendant to be the father of the child. The jury could not be misled in any way by any instruction given. It might have been better to have said that "in case the state failed to prove these material allegations by a fair preponderance of the evidence then the jury should find for the defendant" instead of saying that if the jury find the defendant "is not the father of the child" then they should find for him. How-

ever, there could not be any misunderstanding. If the state's evidence be true the plaintiff is the father of the child, and if the defendant's testimony be true he could not be the father of the child because he denied having had intercourse with her at all. When we consider the charge as a whole in the light of the evidence we find no reversible error.

Some objection is raised to the statement of the court regarding gestation because the court had stated the state was required to prove the allegations of the complaint, one of which was that the child was begotten on or about March 15, 1927, which would be scarcely five months prior to the birth of the child. However, this is not the full purport and meaning of the charge as given by the court for the court stated "a variance between the proof and the complaint as to the exact time when, or the place where, the child was begotten is immaterial, as long as such time remains within the period of gestation." Nothing was said in the charge as to what was the period of gestation. No request was made for any such instruction. However the doctor who testified stated the period of gestation was "anywheres from 240 to 280 days;" that 90 per cent of the normal cases came between 270 and 280 days; that a child might be perfectly normal if born "within the period of 240 to 280 days," and that this child was premature about 14 days. We find no error in the charge in this respect.

A review of the whole case presented on appeal requires that judgment of the lower court be affirmed, and it is so affirmed.

NUESSLE, Ch. J., and BIRDZELL, CHRISTIANSON, and BURKE, JJ., concur.