A. G. DIVET et al., Respondents, v. ROLAND MAGILL, Appellant.

(224 N. W. 313.)

Opinion filed February 19, 1929.   Rehearing denied April 6, 1929.

*Charles S. Ego,* for appellant.

*Divet, Shure, Holt, Frame, Murphy, & Thorp* and *Lawrence, Murphy, & Nilles,* for respondent.

BURR, J. Plaintiffs are licensed lawyers of this state. In their complaint they set forth that they were employed by the defendant to defend in the district court of LaMoure county, one Francis Tucker, the son-in-law of the defendant, charged with murder; that they appeared for the said Tucker in said district court, defended said action "and rendered professional service in the preparation and trial of said action and in counseling and advising the said Francis Tucker and were acting in and about the defense of said defendant in the trial of said action; that said case has been fully tried and a verdict arrived at in said district court;" that the defendant agreed to pay the plaintiffs on or before the fall of 1927 the sum of $2,500 as compensation for their services in the trial and defense of the said action in the district court and agreed in addition thereto to pay any and all sums expended by them in preparation and defense and trial of the action and has paid but $250; and so they ask judgment for the difference.

The answer of the defendant is in effect a general denial. The case was submitted to a jury who returned a verdict in favor of the plaintiffs for the amount demanded and judgment was accordingly entered.

The defendant appeals from the judgment, setting forth eighteen specifications of error—twelve of which relate to rulings of the trial court in the admission of evidence, and six to portions of the instruction given by the court to the jury.

On the trial of the case the defendant was a witness both under cross-examination in the plaintiffs' case and also on his own behalf. As such witness he set forth his version of the contract, which is to the effect that plaintiffs were to defend said Francis Tucker not only in the district court but also in all subsequent proceedings including any proceed-

ings on appeal to this court. Plaintiffs admit they performed no service after their work in the district court. Under the general denial entered by the defendant he could show what the real contract was as made between the parties. Anderson Mercantile Co. v. Anderson, 22 N. D. 441, 134 N. W. 36; Schuster v. Sutherland, 92 Wash. 135, 158 Pac. 730.

It is the contention of the defendant that under the testimony introduced it was error for the trial court to assume there was a contract and that the contract was either as set forth by the plaintiffs or as set forth by the defendant; that the plaintiffs must show the contract as claimed by them; that even if the defendant did not establish the contract in accordance with the version he set forth in his testimony, nevertheless if he showed this was his understanding of the agreement then it was clear the minds of the parties did not meet on any contract and there was no contract at all.

The trial court assumed the contract was either as set forth by the plaintiff or as set forth by the defendant and this governed his rulings in the admission or rejection of testimony and in his charge to the jury.

Francis Murphy was the member of the firm who made the contract and performed the service. He testified to the extent of the work expected, told of the conversation with the defendant leading up to the agreement, what the defendant required and what he agreed to pay. The defendant told of his conversation with Mr. Murphy, admitted he hired plaintiffs but claimed he employed them to take care of the entire case to final conclusion, and not simply for the work in the district court. Thus the defendant admits he employed plaintiffs through Mr. Murphy and that he agreed to pay them as they say. The only place where his version of the contract differs from theirs is he says the plaintiffs were to carry the case to the final conclusion and plaintiffs say they were simply to defend the action to verdict and judgment in the district court. There is no dispute between the parties but what there was a contract and an agreed compensation. Thus when the court submitted the case to the jury, it was correct to assume that the contract was either according to the version given by the plaintiffs or according to the version given by the defendant. In the charge to the jury the court stated among other things:

"The claim of Mr. Murphy is that the agreement between himself

and Mr. Roland Magill was that he was to undertake the defense; that he was to do all the preliminary work necessary to collecting the evidence; making all appearances that might be necessary; getting a change of venue from the county of LaMoure; and that he was to try the case in district court; and that for such services he was to receive the sum of $2,500.

"Mr. Roland Magill claims that that was not the agreement. He says that the agreement was that Francis Murphy was not only to do the preliminary work before the trial, investigating the evidence and collecting the testimony, and trying the action in district court, securing a change of venue, and so on, but that he was to complete the case to its last analysis; namely, that if an appeal to the supreme court of North Dakota was necessary, that he was to take that appeal. If the case was sent back again to the district court for trial, that it should be tried again without any additional charge and again appealed to the supreme court. So that if the trial in the district court might have been two or three times and two or three appeals necessary, that the firm of the plaintiffs was not to receive in any event more than the sum of $2,500 attorney fee."

This is a correct statement of what is disclosed by the record.

"Where two parties make a parol contract, and they disagree about its terms, it is the duty of the court, in an action arising thereon, to explain to the jury . . . the legal effect of each party's recollection of the terms of the same." Stewart v. Fowler, 37 Kan. 677, 15 Pac. 918.

It was not necessary to instruct as to "meeting of minds." This might be necessary if defendant claimed no contract had been created. But he admits there was a contract, and it became an issue what the terms were which he assented to. As said in Bewick v. Butterfield, 60 Mich. 203, 26 N. W. 882: "The remarks of the court in relation to the meeting of the minds of the parties . . . was good law in the abstract, but might have been and undoubtedly was, under the circumstances of the case, misleading. There was no pretense that the minds of the parties did not meet in some kind of an understanding." That is the situation here. They did arrive at a contract; both sides say so —what was the true version was the sole issue to be submitted to the jury and the court submitted it properly.

This view of a contract established—the jury to say which version is correct—is the basis for almost all of the rulings.

The appellant says the court erred in permitting the cross-examination of the defendant as to the opinion regarding the probability of conviction of Tucker in the district court entertained by him on or before the time he made the contract with the plaintiff. There was no error in permitting this examination as the crucial point between the parties is whether the services of the plaintiffs were to terminate in the district court or to continue thereafter. If the plaintiff had the firm opinion that Tucker would be acquitted in the district court it might have some bearing upon the length of time the services of plaintiff were contracted for. This covers specifications of error 1 and 2. Specifications 3 to 11 deal with the work performed by counselor Murphy, his previous experience in defense or prosecution, the extent of his practice in criminal cases, work which brought him into prominence in the state, the length of time spent in preparation and in the actual trial of the case, whether all of his time was devoted to it or some spent on other cases, his opinion as to the value of the service and work done outside of the state. There was no error in this. It was admitted by the parties defendant was to pay $2,500. This might well be considered by some of the jurors a fortunate compensation and to support the contention that the parties contracted for services in the district court only it was permissible to show the extent of work that was required, and the reputation and professional skill of the one employed in order to counteract the possible assumption that because the fee was so large it must necessarily have included work to the end.

Specification 12 deals with the reception of certain offered exhibits based on the cross-examination of one John Magill, the son of the defendant. Objection is levelled especially against Exhibit 4, a letter written by John Magill to Francis Murphy on May 7th. As said by the appellant in his brief:

"This witness is one of the defendant's sons and the testimony fairly establishes an eager activity on his part in the defense of his sister's husband. He was present with the defendant when Mr. Francis Murphy was retained to defend Mr. Tucker and claims to have heard the conversation arrangement which is in issue."

The record shows that both the father-in-law and the brother-in-law

were interested in the defense of Tucker. The witness under cross-examination, John Magill, was present when the contract was made and took part in the conversation. The evidence shows that while the contract was made with the defendant nevertheless the witness. John Magill had much to say regarding it, and advised and counselled with his father. The father himself testified that while talking with Francis Murphy the latter wanted all others present to retire, evidently for the purpose of discussing the matter alone with the defendant, and that defendant himself told the witness John Magill to remain saying "You are interested in this case as much as I am. You sit right where you are." The exhibit objected to was a letter written to Murphy in which among other things, the witness had said:

"You have been recommended to us very highly . . . there is no doubt that local attorneys could bring out the facts sufficiently to prove Francis Tucker entirely innocent; but we want some one who is not afraid of Green. (It was known Mr. Green was to be the prosecuting counsel in the Tucker Case.) Are you willing to undertake the task for us."

The letter was necessarily used in the cross-examination of John Magill and it was proper to receive it. This was introduced in rebuttal and there are objections raised to the fact that it was "introduced for all purposes." The letter was relevant. It showed the value which the defendant and his son placed upon the services of Mr. Murphy and would have bearing upon the probability of $2,500 being agreed upon as compensation for work to terminate in the district court rather than the same amount for services not to end until the case finally was disposed of. It is charged that some statements of the letter were "highly denunciatory and defamatory" of Mr. Green and would likely prejudice the jury. Mr. Green was not counsel in the case at bar. In any event if the letter was admissible the fact that the writer had given way to strong feeling would not in itself be sufficient to reject it.

The specifications regarding instructions deal with two general matters—first, the assumption that the contract was either as set forth by the plaintiff or as set forth by the defendant and, second; the court erred in directing the jury to consider extraneous matter.

In addition to what has been quoted before, the court charged:

"So there is only one question for the jury to say. What was the contract? If the contract was as claimed by Mr. Murphy, then your verdict must be for the plaintiff for the full amount. If the contract was as claimed by Mr. Roland Magill, then your verdict must be for Mr. Magill for a dismissal of the action, and Mr. Murphy cannot recover anything at your hands."

Standing alone this might be considered error as improperly placing the burden of proof. But the court charged also:

"The burden of proving what the contract was in this case is upon the plaintiffs, and they must establish that contract by a fair preponderance of the evidence." And that the verdict must be for the defendant "if the plaintiffs have failed to establish their contract by a fair preponderance of the evidence. In the light of the charge as a whole and the proper placing of this burden of proof it cannot be considered reversible error. See State v. Luithle, ante, 316, 221 N. W. 885.

In the instructions the court said:

"Now you have heard the testimony of Mr. Murphy and Mr. Shure for the plaintiffs, and you have heard the testimony of Mr. Roland Magill and Mr. John Magill, for the defendant, and of course there is a conflict, or nearly so, in that testimony.

"So the jury have a right to, and they should, go beyond the testimony to this extent. That they should search out all the surrounding circumstances involving the parties at the time that this contract was made, to ascertain just exactly what the contract was."

And then goes on to state, among these they should take into consideration Francis Tucker was a son-in-law, that he was charged with murder, the "importance of the case" involved, "the reputation, the standing, the ability and skill of Francis Murphy, such as has been disclosed by the testimony here" and that "they should take into consideration the probable amount of work which Mr. Murphy at the time saw before him as disclosed by the evidence here." It is clear that when the court said the jury "should go beyond the testimony" the court meant beyond the oral testimony as given on the stand so as to include all the evidence which was in the record. The court did not tell the jury to go outside of the case. The court told the jury to be governed by the "evidence produced before you," and "if in your opinion the testimony

on any essential point is evenly balanced, then the party on whom the burden rests to prove the same by a fair preponderance of the evidence must be decreed to have failed in regard thereto." The court had already stated that the burden of proof was upon the plaintiffs. There was no error in this.

The remaining specification of error deals with the instruction to take into consideration the exhibits introduced "in arriving at your verdict in this case and you should give them such weight as you deem they are entitled to under the evidence and under these instructions." There was no error in this. The exhibits were properly introduced and we find that there was no error in receiving the exhibits objected to. The judgment of the lower court is affirmed.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.