MORGAN et al. v. KELLER et al., Appellants.

Division Two, March 6, 1906.

1. **MOTION FOR NEW TRIAL: Sufficiency.** Although the motions in a law case on their face merely "move the court to set aside the verdict of the jury," yet if they are treated by the trial court as motions for a new trial they will be so treated on appeal.

2. **COMMISSIONS: Sale of Property: Joint Contracts: Misjoinder.** Where a contract was made with the stockholders of a corporation to sell its properties, if the contract was several, that is, if each one of them, for himself only, contracted and promised to pay the agents for the sale of the property, they could not be sued jointly by the agents for their commissions, but such suit could be maintained against each upon his indi-

Morgan v. Keller.

vidual promise or contract. But in this case, while the conversations of defendants with plaintiffs were with defendants singly, each apart from the other, yet the evidence tends to show that as a rule such conversations had some connection with or reference to other conversations previously had with the other defendant regarding the sale, and that on one occasion when defendants were together with one of plaintiffs, and with another on another occasion, they employed plaintiffs to sell the property, and hence the judgment will not be reversed on the ground that there was no joint promise by defendants. The question of whether the contract was joint or several having been submitted to the jury on proper instructions, and the jury having by the verdict in effect found it to be joint, and there being substantial evidence to sustain that view, it will not be disturbed.

3. ———: ———: **Assuming Debt.** Where the sale included an obligation by the purchasers to pay a debt for which the sellers were personally liable, the fact that such debt was not paid did not make it any the less a sale. Where the sellers themselves seemed to regard the sale as complete and it seemed satisfactory to them and their conduct thereafter indicates that they regarded it as a sale to all intents and purposes, that is all that is necessary to entitle the agent to his commission for making the sale.

4. ———: ———: **When Payable.** A real estate agent is entitled to his commission when he procures a purchaser able and willing to buy on the terms authorized by the principal, and the purchaser is ready, able and willing to carry out such terms.

5. ———: ———: **Concluded by Principal.** Where the agent at the instance of the vendor is the procuring cause of the negotiations which result in a sale, he is entitled to his commission, even though the negotiations were conducted and concluded by the principal in person.

6. ———: ———: **Reasonable Time.** Where the agent and vendor did not agree upon the time within which the sale was to be made, but it was consummated by the vendor, he is in no position to say that it was not made within a reasonable time.

7. ———: ———: **Amount: Deferred Payments.** The agent is entitled to the agreed per cent upon the amount for which the property was sold, whether all the price was paid at once, or some payments deferred. Nor is he required to wait for his commissions until the deferred payments are made, or until all the covenants of the purchasers are complied with.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Thomas Dolan* for appellants.

(1) Two separate several contracts were admitted in evidence to prove the joint contract declared on. The trial court erred in admitting, over the objections of appellants, evidence of the distinct, separate and several agreements of defendant Zentner, and the distinct, separate and several agreements of defendant Keller, to prove the joint contract of defendants declared upon in plaintiffs' petition. Davis & Rankin v. Creamery Co., 63 Mo. App. 480; Davis & Rankin v. Barber, 51 Fed. 148; Davis & Rankin, v. Belford, 70 Mich. 120; Frost v. Williams, 50 N. W. 964; Keith v. Cobb, 110 Ala. 618; Lee v. Bolles, 20 Mich. 51; Jackson v. Bush, 82 Ala. 507; Jones v. Englehardt, 78 Ala. 396; Walker v. Ins. Co., 31 Ala. 529; Gamble v. Killum, 97 Ala. 680; Hudson v. Emmons, 107 Mid. 552; Addickson v. Schruble, 45 Iowa 316; Whittemore v. Merrill, 87 N. E. 416; 1 Greenleaf on Ev., sec. 66; 2 Greenleaf on Ev., sec. 110. (2) There was no proof of the contract declared on. The plaintiffs, having declared upon a joint contract, failed in their proof, because there is no evidence of any contract or agreement with plaintiffs except the separate, several agreement of Zentner to which Keller was not a party, and the separate several agreement of Keller to which Zentner was not a party, as there was no partnership between defendants shown, nor was it shown that in any respect whatever did the relation of principal and agent exist between them; but the contrary was shown. The court, therefore, should have sustained the demurrer of Keller and Zentner to the plaintiff's evidence, also their demurrers at the close of

all the evidence. Davis & Rankin v. Creamery Co., 63 Mo. App. 480; Jackson v. Burch, 82 Ala. 396; Keith v. Cobb, 110 Ala. 618; Jones v. Englehardt, 78 Ala. 505; Gamble v. Killum, 97 Ala. 680; Walker v. Ins. Co., 31 Ala. 529; Whittemore v. Merrill, 87 N. E. 46; Addickson v. Schrube, 45 Iowa 316; Hudson v. Emmons, 107 Mich. 522; Lee v. Bolles, 20 Mich. 51. (3) The employment alleged was to sell the property of the brewing company. This, the evidence shows, was not done. But instruction 1 assumed that it was done. Instruction 1 given for plaintiff should not have been given because it assumes that the property of the Brewing Company or stock of the stockholders was sold. This was a fact put in issue and the evidence was a contract in the nature of an option given to Keasbey & Dall by which Keasbey & Dall, in order to secure the stock of defendant Keller and Zentner, which was placed in escrow, were to pay off all the debts of the corporation upon which Keller and Zentner were liable, not to exceed $30,000 and deliver to Keller —— shares of the capital stock of Middle West Brewing Company and to deliver to Zentner —— shares of the capital stock of Middle West Brewing Company, and the evidence showed that the stock was still in escrow, Keasbey & Dall having failed to do as agreed. It has been held that such an option contract does not constitute a sale and that it furnishes no basis for a suit for commission by the broker employed to find a purchaser. Butts v. Ruby, 85 Mo. App. 406; Zeidder v. Walker, 41 Mo. App. 119. (4) The instruction 5 on the measure of damages is erroneous. The court erred in giving at plaintiffs' instance instruction 5 on the measure of damages; said instruction tells the jury to add to the amount of cash and stock the amount of the debts of the Joplin Brewing Company of every kind and description and reach a verdict for ten per cent.

*C. V. Buckley, Geo. Hubbert, W. Jones* and *R. G. Blair* for respondents.

No motion for a new trial appears in the printed record. And appellants can have no standing in this court upon any point not brought to the attention of the circuit court by such motion. While it is true that the record entries in the case purport to note the filing of motions for new trial, and the so-called bill of exceptions so recites likewise, yet when the motions are examined we find 18 reasons assigned as grounds, not for new trial, for each of the motions only and merely ''moves the court ·to set aside the verdict of the jury therein, for the reasons following, viz.:'' There is only one way that a party may be heard to ask for a new trial; the statute provides no collateral or indirect way, but a simple and direct way is provided as follows: Sec. 725. ''The court may award a new trial of any issue, upon good cause shown,'' etc. Sec. 803. ''All motions for new trials and in arrest of judgment shall be made, within four days after trial.'' If a new trial be granted, that vacates the verdict by implication; but‘ the vacation of a verdict, if it may be done, is not awarding a new trial. Blackstone says: (p. *387) ''If any defect of justice happened at the trial, by surprise, inadvertence, or misconduct, the party may have relief . . . . by obtaining a new trial . . . Causes of suspending the judgment by granting a new trial.'' Bouvier's definition of new trial: ''A rehearing of the legal rights of the parties, upon disputed facts, before another jury, granted by the court on motion of the party dissatisfied with the verdict of the previous trial, upon a proper case being presented for the purpose,'' citing: 4 Chitty Gen. Prac., 30; Gra. & Wat. N. Tr., 32. If the objection to a verdict be its ambiguity, or that it cover only part or none of the issue, or immaterial issue only, then the motion might be, for *venire de novo,* or repleader. 2 Ell. Gen. Prac., secs. 985, 986. ''A

motion for a new trial is an application made in the
trial court for a retrial of an issue or issues of fact. It
is direct and not a collateral motion." 2 Ell. Gen. Prac.,
sec. 987; Hil. New Tr., sec. 1; Zaleski v. Clark, 45 Conn.
397. Anderson defines new trial to be "A re-trial,
awarded for defeat of justice happening at the former
trial, by surprise, inadvertence, or misconduct." Tidd
says: "But a general verdict can only be set right by
a new trial, which is no more than having the cause
more deliberately considered by another jury," etc.
2 Tidd. Prac., *905. Our statute relating to appeals ex-
pressly provides that appeal may be taken from "any
order granting a new trial," which shows the legislative
view of the matter of new trials and how accomplished.
R. S. sec. 806. And where the appealability of an order
relating to nonsuit was held, it was upon the distinct
ground that it was the "granting of a new trial" when
there had been an order "setting aside the judgment
and granting another trial of the issues." Coatney v.
Railroad, 151 Mo. 40. The previous case, which was
there followed, is not so explicit in the opinion as the
terms of the order appealed from, but the brief of the
losing party concedes the fact the order appealed from
was one setting aside the nonsuit and granting a rehear-
ing. But a motion to re-open a case, in order to pro-
ceed to offer evidence relating to the issues, is not a
motion for "new trial," within the meaning of our stat-
ute (although it would seem quite as nearly so as a
motion to set aside a verdict; and, indeed, it would be a
sort of new trial in fact). Nelson v. Betts, 30 Mo. App.
10. Nor is the setting aside of a default judgment a
new trial, within the statute, even if the court should so
express in its order. Crossland v. Admire, 118 Mo. 87.
We have not discovered any case ruling that a motion
to set aside a verdict is a motion for the award of a new
trial, and we submit that it cannot be so ruled under the
common law or our statute; and we submit that the
naming of the instrument a motion for new trial does

not change its expressed object, nor enlarge its specific purpose as set out on its face; and that the sustaining of a motion to set aside a verdict would not be appealable under the statute. A judgment may be good without a verdict in some cases, yes, even *non obstante veredicto*. To award a new trial is to obliterate the results of the old trial, and vacate any judgment entered thereon. But it does not follow that the vacation of a verdict will accomplish more without a further order.

BURGESS, P. J.—This is an action by J. J. Morgan and Henrietta Von Ronzelen, who sue under the firm name and style of J. J. Morgan & Co., as partners, and their co-plaintiff, W. H. Gault. At the trial, after plaintiffs' evidence was in, the cause was dismissed as to L. P. Cunningham, who was an original party.

The petition alleges that in the month of December, 1900, plaintiffs were employed by the defendants, George W. Keller, Nicholas Zentner and L. P. Cunningham, who owned or were the principal stockholders in the Joplin Brewing Company, to sell certain property of the said Joplin Brewing Company, that is, all the property and assets thereof described as follows: certain real estate located on Main street and Virginia avenue, in Joplin, Jasper county, Missouri, and its brewery, ice plant, machinery, saloons and personal property used in and about the business of said brewing company, and that defendants agreed to pay plaintiffs the sum of ten per cent of the price which said property should be sold at to any purchaser or purchasers obtained or procured by the plaintiffs. That the plaintiffs thereupon undertook the sale of said property on behalf of defendants, and through their efforts, exertions and instrumentality, procured as purchasers for said property R. L. Dennison, C. A. Dall and F. W. Keasbey, and that on the —— day of March, 1902, said property was sold by the defendants to said purchasers. That said

sale was made by the transfer of the capital stock held and owned by the defendants and others in said Joplin Brewing Company, and said property and assets were sold by transferring all the said capital stock of the defendants and other stockholders to the purchasers thus procured by the plaintiffs, at and for the sum of $87,500. That said sale was made to the parties procured and produced therefor by the efforts of plaintiffs. That the defendants individually employed and agreed to pay to the plaintiffs ten per cent on whatever sum said Joplin Brewing Company should be sold at by defendants to such purchaser or purchasers as should be produced and procured by the plaintiffs, and that upon such sale the defendants became indebted to the plaintiffs in said sum. That plaintiffs have frequently demanded of the defendants that they pay the same to plaintiffs, but that they refused to pay said amount or any other sum. Wherefore, plaintiffs ask judgment for the sum of $8,750.

Each one of the defendants answered separately and denied each and all of the allegations in the petition contained.

The facts, briefly stated, are about as follows:

Plaintiffs, Morgan and Von Ronzelen, were at the time of the making of said sale partners and brokers in the real estate business at Joplin. Plaintiff Gault was also engaged to some extent in the same line of business and his services were engaged in the performance of the contract made by his co-plaintiffs for the sale of said brewery and other property connected therewith. In the latter part of November or the first part of December, 1900, the defendants employed plaintiff Morgan to sell the brewery plant of the Joplin Brewing Company, as before stated, agreeing to pay him a commission of ten per cent of whatever sum it should be sold for by him, Morgan, it being understood that he should not ask more than $100,000 for the entire property, the reason being that many other parties had had

the property for sale, but had failed to sell it, as defendants stated, because they placed the price too high. Morgan's firm took the matter up and communicated, personally and by correspondence, with prospective purchasers, sending out letters, prospectuses, etc., over the country to parties whom they thought might be interested in such property. Among others approached by Morgan on the subject was Mr. Dinkelbihler, of Joplin, and also, through his partner, Mrs. Von Ronzelen, Mr. Busch of St. Louis. In the summer of 1901 he interested Mr. R. L. Dennison in the project. The latter went East where they saw F. W. Keasbey and C. A. Dall, whom he brought to Joplin to look over the property. They were pleased with it, took an option thereon, which was renewed until the 10th day of March, 1902, at which time they had paid on the property or options which they had obtained the sum of $700. On the said 10th day of March, they concluded the deal, taking over all the property, assets, book accounts, bills receivable and capital stock. For this they paid, as the purchase price of the entire property, to defendant Keller, $3,500; to Zentner, $5,000; to L. P. Cunningham, $2,500; to George Muennig, $500; to Seidenstricker, $100; making $11,600 in cash; and they assumed $30,000 of the company's debts, or rather agreed to relieve defendants of their individual liability to that amount of the company debts. In addition, they gave Zentner $20,000, par value, in stock in the Middle West Brewing Company, which they had organized; to Keller, $14,000 and to Cunningham $8,000 in like stock; making, in all, $83,600. They took charge of the brewery and began operating it. About the 25th day of March, 1902, some fifteen days after the completion of the sale, Morgan asked the defendants for a settlement of his commissions. They refused.

The trial of the cause took place before the court and jury, on January 21, 1903, and resulted in a verdict for the plaintiffs in the sum of $8,468. Each of the de-

fendants, Zentner and Keller, filed separate motions for a new trial and in arrest, which being overruled, they saved their exceptions and by appeal bring the cause to this court for review.

Other facts in evidence will be stated, where thought necessary, in the course of the opinion.

The court, over the objections and exceptions of defendants, instructed the jury as follows:

"1.   The court instructs the jury that if you find from the evidence that the defendants employed the plaintiffs to sell for them the Joplin Brewery Co. property, and agreed to pay them ten per cent on whatever sum it sold for, and the plaintiffs procured F. W. Keasbey and other parties to whom said property was sold, either direct or by transfer of the capital stock of the stockholders of said company, then you should find the issues in favor of the plaintiffs, and assess their damages at ten per cent of whatever sum said stock was sold for, together with six per cent interest thereon from the time demand was made, if any demand was made, and if not, then from the time of the institution of this suit.

"2.   The court instructs the jury that it is admitted by the pleadings that at the time so alleged in the petition the plaintiffs, J. J. Morgan and Henrietta Van Ronzelen, were partners; and if you find from the evidence that it was agreed between the plaintiffs that plaintiff Gault should have a portion of the compensation, and you should further find from the evidence that the defendants, Keller and Zentner employed the plaintiff J. J. Morgan to negotiate a sale of the brewery property for them, or to find a purchaser therefor, and agreed to pay him ten per cent of whatever sum it sold for, and you should further find from the evidence that through the efforts or instrumentality of the plaintiffs, or either of them, they procured F. W. Keasbey, R. L. Dennison and C. A. Dall, or either of them, to whom the defendants Keller and Zentner, and the other stock-

holders of the Joplin Brewing Company, sold their stock therein, either for cash or on credit, or part cash and part credit, and part in stock in the Middle West Brewing Company, and in part to relieve the defendants, Keller and Zentner, of their liability on obligations for said Joplin Brewing Company, then you will find the issues in favor of the plaintiffs, and assess their damages at ten per cent of the entire purchase price paid, or to be paid, for said Joplin Brewing Company, and that without reference to the fact that defendants did not receive, or were not to receive, all the purchase price of said stock, but some part thereof was paid to other stockholders of said Joplin Brewing Company.

"3. You are instructed that it is only necessary in order to recover in this case for plaintiffs to have found or procured the purchaser for the brewery, after the same was placed in their hands for sale. It was not necessary for them to have conducted the sale; this may be done by the sellers themselves without the aid or presence of the plaintiffs, or any of them.

"4. You can find the issues against both or either of the defendants, if warranted by the evidence. But if you find from the evidence that either of the defendants did not employ the plaintiffs to sell the property and you should further find from the evidence that one of the defendants did employ them, and agreed to pay them ten per cent for their services on whatever sum the property sold for to the purchaser found by them, then you should find the full amount of ten per cent of the purchase price against the defendant or defendants so employing the plaintiffs, regardless of the particular amount or proportion of the purchase money received by such defendant or defendants.

"5. In determining the purchase price at which the property sold, if you find for the plaintiffs, you are to ascertain from the evidence the cash paid by the purchasers to all of the stockholders of the Joplin Brew-

ing Company, if any, together with the debts of every kind of said company, if any, either paid or assumed to be paid by the purchasers, and to that add the reasonable value of the capital stock in the Middle West Brewing Company taken or agreed to be taken by the defendants, if any, which value you are to find from the evidence, and on the total amount cast ten per cent as the amount of your verdict.

"6.    The court instructs the jury that, although you believe from the evidence that plaintiffs were not to sell the property for less than $100,000, yet if you further find from the evidence that defendants voluntarily reduced the price or changed the terms in their sale to Keasbey and others, still the plaintiffs are entitled to recover, provided you find for them under the evidence and other instructions in the case.

"7.    The court instructs the jury that if you believe from the evidence that the defendants placed the property in question in the hands of plaintiffs for sale, and that plaintiffs, or either of them, brought about the sale, by introducing the purchasers, whereby a sale was perfected with defendants, then and in that case plaintiffs would be entitled to their commission agreed upon, even though you may believe that the defendants sold said property to said purchasers at a less price than the amount at which plaintiffs were to offer said property."

The court, at the request of the defendants, gave the following instructions:

"1.    The court instructs the jury that in order for plaintiff to recover in this case it is necessary for them to show by a preponderance or greater weight of the evidence that the said Keasbey and Dall were able, ready and willing to carry out their contracts of purchase made with defendants, and in determining the question as to whether said Keasbey and Dall are able, ready and willing to carry out the said contract of purchase, you may take into consideration the fact that they

have not paid off the said debts of the Joplin Brewing Company, required to be paid by their contract of purchase, along with all other facts and circumstances in the case, and unless you find and believe from a preponderance or greater weight of the evidence that said Keasbey and Dall, at the time of the commencement of this suit, were able, ready and willing to comply with said contract of purchase, you should find for the defendants.''

The defendants asked the court to give the following instruction:

''The court instructs the jury that before you can find in favor of the plaintiffs in this case, you should believe from the preponderance or greater weight of the evidence that there was a joint employment by defendants of the plaintiffs to procure a purchaser for the property of the Joplin Brewing Company.''

Which said instruction was by the court given, after having been by the court changed, altered and modified to read as follows:

''2. The court instructs the jury that before you can find in favor of the plaintiffs, against both defendants, G. W. Keller and N. Zentner, in this case, you should believe from the preponderance or greater weight of the evidence that there was a joint employment by defendants of the plaintiffs to procure a purchaser for the property of the Joplin Brewing Company.''

To the changing, altering and modifying of said instruction the defendants at the time excepted.

The defendants asked the court to give the following instruction:

''The court instructs the jury that if they believe from the evidence that N. Zentner, defendant, placed or fixed the price with plaintiffs to be received for the property at one hundred thousand dollars, and promised to pay ten per cent commission if the sale was

made, for said sum, the plaintiffs cannot recover from the defendants.''

Which said instruction was by the court given, after having been by the court changed, altered and modified to read as follows:

''3. The court instructs the jury that if they believe from the evidence that N. Zentner, defendant, placed or fixed the price with plaintiffs to be received for the property at one hundred thousand dollars, and promised to pay ten per cent commission if the sale was made for said sum, the plaintiffs cannot recover, and you should find for the defendants, unless you further find defendants varied or changed said price from that of the first negotiations with the plaintiffs.''

To the changing, altering or modifying of said instruction the defendants at the time excepted.

Defendants asked the court to give several additional instructions, all of which were refused, but as no point is made upon any of the refused instructions except one, number 15, that only will be incorporated in this opinion. It is as follows:

''15. The court instructs the jury that no time being fixed for the plaintiffs to procure a purchaser or purchasers for the property of the Joplin Brewing Company, if the jury believe that plaintiffs were employed to procure a purchaser or purchasers within a reasonble time, and unless you believe from a preponderance or greater weight of the evidence that said purchasers were produced in a reasonable time, you should find for the defendants.''

The first question with which we have to deal is the failure of defendants, as plaintiffs contend, to file a motion for a new trial, in the absence of which there is nothing before us for review other than the record proper. It is conceded by plaintiffs that the record entries in the case purport to note the filing of motions for new trial, and that the bill of exceptions also so recites; but they assert that the motions, upon their face,

merely "move the court to set aside the verdict of the jury," for reasons assigned in such motions, and that as they do not ask for a new trial, they are, therefore, ineffectual for any purpose. Under our practice, the setting aside the verdict of a jury is in effect the granting of new trial. When the verdict is set aside in a law case, there is nothing upon which to base a judgment, and the case stands just as if no trial had been had. But suppose, as in the case at hand, the motions to set aside the verdict are overruled, not upon the ground that they do not ask for a new trial, but upon other grounds, and the court in this way and in all orders respecting such motions, as well also as in the bill of exceptions, recognizes and refers to them as motions for a new trial, should it be held that they are not motions for a new trial? We think not. They were in effect motions for a new trial, which could not have been had unless the verdict was first set aside, in which event a new trial follows as a matter of course. The motions we think sufficient, more especially when recognized and treated by the trial court as such.

The first assignment of error by defendants is with regard to the action of the court in admitting, over their objection, evidence of distinct, separate and several agreements of defendant Zentner, as well also as of defendant Keller, to prove the joint contract of defendants declared upon in plaintiffs' petition. The defendants are not sued as partners, and before they can be charged as joint promissors or contractors it must appear from the evidence that they jointly agreed with plaintiffs to pay the latter, for the services to be rendered by them in the sale of the property described in the petition, ten per cent of the purchase price or amount realized upon such sale. If defendants were joint contractors or promissors, they could, under our statutes (sections 889, 892, R. S. 1899, which change the common law rule), be sued either jointly or separately. But if the contract was several, that is, if each one of

the defendants for himself only, contracted and promised to pay for the sale of the property, such an one could not be sued jointly with the other defendants, but a suit could be maintained against each upon his individual promise or contract.

While most of the conversations of defendants with plaintiffs, respecting the contract for the sale of the property, were conversations with defendants singly, each apart from the other, and there were statements and admissions by defendants, respectively, in evidence tending to show that they were of the character complained of; yet, as a rule, and as the evidence showed, such conversations had some connection with or reference to other conversations previously had with the other defendant regarding said sale. There also was evidence which tended to show that Zentner and Keller, when together with Gault on one occasion, and with Morgan on another, employed plaintiffs to sell the property. The judgment should not, therefore, be reversed upon that ground.

Instruction numbered one, given for plaintiffs is complained of on the ground that it assumes that plaintiffs effected a sale of the property, when in fact, as defendants contend, there was no sale. This contention is bottomed upon the theory that the contract for the disposition of the property was in the nature of an option given to Keasbey and Dall, under which they, in order to secure the stock of defendants Keller and Zentner, in the Joplin Brewing Company, which was placed in escrow, were to pay off all the debts of the corporation upon which Keller and Zentner were liable, not to exceed $30,000, and deliver to Keller — shares of the capital stock of the Middle West Brewing Company, and deliver to Zentner——shares of said stock although the evidence showed that the stock was still in escrow, Keasbey and Dall having failed to do as agreed. It is true it was an option at first, but when the sale was completed it ceased to be such. At any rate,

it seemed to be satisfactory at the time to the owners of the property, and their conduct then and afterwards would more than indicate that they regarded it as a sale to all intents and purposes, and that was all that was necessary to entitle plaintiffs to their commission.

In Gelatt v. Ridge, 117 Mo. 553, it is held that a real estate agent performs his duty, and is entitled to his commission, when he procures a purchaser able and willing to buy on the terms authorized by the principal, and the purchaser is ready, able and willing to carry out such terms. [Childs v. Crithfield, 66 Mo. App. 422.] It is also held that where the agent is the procuring cause of the negotiations which result in a sale of property at the instance of the vendor, he is entitled to his commission, even though the negotiations were conducted and concluded by the principal in person. [Bell v. Kaiser, 50 Mo. 150; Timberman v. Craddock, 70 Mo. 638.] It is said for defendants that instruction number two, given for plaintiffs, is erroneous and should not have been given, because "employment" by defendants presupposes a joint employment, and there was no evidence to that effect. While the evidence was conflictng upon this feature of the case, there was some evidence which tended to show a joint employment sufficient possibly to take the case to the jury. It is further contended that this instruction, as to the measure of damages, is in conflict with plaintiffs' instruction number five upon that subject, in that instruction number two tells the jury to take as part of the estimate of damages ten per cent of the amount of the debts of the Joplin Brewing Company from which Keller and Zentner were to be relieved as sureties, while number five tells the jury that they should take into account ten per cent of the debts of every kind of said company, when, in fact, there was no evidence as to what was the amount of the debts from which Zentner and Keller were to be relieved, nor any evidence as to the amount of the debts of every kind of said company. With re-

spect to the last proposition, the evidence shows that at the time of the sale of the property to Keasbey. and Dall the debts of the company were in the neighborhood of $30,000; and it is further shown by the evidence that this indebtedness was assumed by Keasbey and Dall, and that in this way defendants Zentner and Keller were freed from any liability on account of said indebtedness. According to the written contract entered into between the parties at the time of the sale, the purchasers of the property agreed to relieve Zentner and Keller of all personal liabilities theretofore incurred by them as indorsers of the paper, notes or other obligations of the Joplin Brewing Company, the same not to exceed thirty thousand dollars; so that it is clear there is no real conflict between the instructions named.

The time in which plaintiffs were to make the sale was not agreed upon between the parties, nor was any time fixed by defendants, and as defendants consummated the sale which was brought about by the plaintiffs they are in no position to claim that it was not made within a reasonable time. There was no error, therefore, in the refusal of the instruction asked by defendants upon that proposition. Nor is there any merit in the contention that the verdict of the jury is excessive. If the plaintiffs were entitled to recover anything at all, it was ten per cent of the amount for which the property was sold, whether the terms of the sale agreed upon by the owners of the property and the purchasers were complied with or not. The agents were not guarantors of deferred payments or covenants but were entitled to their commission when they furnished the buyers and the sale to them was consummated. They did not have to wait until all deferred payments were paid, and all covenants on the part of the purchasers complied with. The instruction given for defendants upon this feature of the case was more favorable to them than authorized by the law of the case.

The only question in the case in regard to which we entertain any doubt is as to whether the contract sued upon is joint or several. This question was, however, submitted to the jury by the instructions, and the effect and meaning of their verdict is that it is joint. There was some substantial evidence to support the verdict, and under such circumstances we cannot interfere, whatever may be our views regarding the matter.

Finding no reversible error in the record, the judgment is affirmed.

All concur.