### RICE-WRAY *v.* PALMA.

Brokers—Commissions—When Earned—Deferred Payments.

A broker became entitled to the commission agreed upon in writing for the sale of a banking business when he procured for his principal a party with whom he was satisfied and who actually contracted for the purchase at a price acceptable to the owner, and it is immaterial that the purchase price is to be paid out of the future earnings of the business; nor is he bound to wait until all deferred payments are made and all agreements on the part of the purchaser complied with.

Error to Wayne; Codd (George P.), J.   Submitted October 20, 1921.   (Docket No. 149.)   Decided December 21, 1921.

Assumpsit by Theron C. Rice-Wray against Ferdinand Palma for commissions on the sale of certain banking property.   Judgment for plaintiff on a directed verdict for less than amount claimed.   He brings error.   Reversed.

*Wilkinson & Hinkley*, for appellant.

*Connolly & Henderson*, for appellee.

Defendant was engaged in the private banking and steamship ticket business in Detroit, having two places of business.   He desired to sell out the business and after some preliminary negotiations with plaintiff on May 28, 1919, he executed and delivered to plaintiff a written memorandum which, so far as important here, contained the following:

"I, the undersigned, do hereby agree to give unto Theron C. Rice-Wray, of the city of Detroit, county

of Wayne and State of Michigan, the sole and exclusive right, for the period of two months from and after the date hereof, of selling the banking business now being conducted by me in the city of Detroit, Wayne county, Michigan, for the sum of one hundred thousand ($100,000.00) dollars, and I do hereby agree that in case my said banking business shall have been sold within said two months from the date hereof for the said sum of one hundred thousand ($100,000.00) dollars, to pay to the said Theron C. Rice-Wray the sum of ten thousand ($10,000.00) dollars for his services in connection therewith."

The plaintiff soon brought the defendant and the officers of the American State Bank together and as a result on June 17th defendant and the American State Bank entered into a written agreement which covers some 6 pages of the record. We shall not quote it in full but will quote such portions as are important to the question here presented. After reciting the desire of defendant to sell, and of the bank to purchase, the contract contained the following:

"Now, therefore, it is agreed as follows:

"1. Said Ferdinand Palma agrees to sell, and said American State Bank agrees to buy:

"(*a*) All the private banking and steamship ticket business of the said Ferdinand Palma conducted at 368 to 370 Monroe Street, at the corner of Russell, and 654 Riopelle street, at the corner of Scott, in the city of Detroit, together with the good will thereof and all personal property connected therewith and used therein."

Then follows more in detail the property sold. The second clause of the contract so far as important here is as follows:

"The said American State Bank agrees to purchase said banking business and property and said real estate described in last paragraph above; and further agrees." * * *

Paragraph (*a*) need not be detailed further than

to say that it provided for the sale of certain real estate not used in the banking business.

"(b) To pay to the said Ferdinand Palma for the said banking and steamship business and the personal property as described in paragraph 1 (e), fifty (50) per cent. of the net earnings of the said Ferdinand Palma banking business and said steamship ticket business until the said fifty (50) per cent. of said net earnings shall aggregate one hundred thousand ($100,000.00) dollars."

Then followed provision for application of payments and inspection of the books by defendant to determine the profits:

"Said American State Bank agrees, as part consideration for the sale and transfer of said banking business, that it will assume and pay the obligations of said Ferdinand Palma in said banking business and the deposits thereof as specified by him up to the amount set forth in the statement or schedule hereof hereto attached, but no more.

"The said American State Bank also agrees, as a part consideration for the purchase of said private banking business as above, that it will rent of the said Ferdinand Palma the premises at 368 to 370 Monroe street and at 654 Riopelle street, where the said banking business is carried on, including the fixtures and furniture therein." * * *

And then followed provision for a 10-year lease with option to the bank to purchase at the sum of $60,000; other provisions of the agreement insured the bank in the purchase of the good will and the agreement contained further details between the parties not necessary to here relate.

Pursuant to this agreement defendant executed a bill of sale transferring the business and assets to the American State Bank and entered into the 10-year lease of the business properties with the option to purchase at the sum named. This action is brought by plaintiff to recover the agreed commission and it

was and is the claim of him and his counsel that the commission has been fully earned and is now due. The position of defendant's counsel is thus stated in their brief:

"The agreement between Palma and the American State Bank is not an agreement providing for deferred payments, but it is an agreement for contingent or conditional payment. The American State Bank does not bind itself to pay Palma one hundred thousand ($100,000) dollars; in substance, it binds itself only to take over and manage his banking and steamship business and, if and when this business shows net earnings of two hundred thousand ($200,000) dollars, Palma gets one hundred thousand ($100,000) dollars, and the American State Bank owns his banking and steamship business. In other words, plaintiff, Rice-Wray, did not bring to defendant Palma a customer who was ready, willing and able to pay one hundred thousand ($100,000) dollars for his banking and steamship business. All that his customer, the American State Bank, obligates itself to do is to manage the business, taking control of the assets and deposits, and paying the expenses, and after the business earns net two hundred thousand ($200,000) dollars to pay Palma one hundred thousand ($100,000) dollars. On the other hand, if the business never earns two hundred thousand ($200,000) dollars, Palma will never get one hundred thousand ($100,000) dollars."

The trial judge accepted the contention of defendant. While he held that plaintiff had earned the full commission, he accepted the view of defendant that it was not payable until defendant received his pay from the American State Bank, and as only $12,500 had been thus paid he directed a verdict for $1,250. Plaintiff reviews the case here, raising only the main question.

CLARK, J. (*after stating the facts*). The trial judge was clearly in error. The agreement between defendant and the American State Bank was an agree-

ment to sell on the one hand and to purchase on the other. It was an agreement for a present sale. It was carried out by transferring to the purchaser all the business and assets of defendant, and the execution of the lease. Title then passed to the bank which was subject to be defeated by no contingency. Plaintiff had procured for defendant a purchaser ready, willing and able to pay the sum of $100,000 for the business. True the payments were to be made out of the profits and were, therefore, to be deferred, but that was satisfactory to defendant and was in accordance with the agreement between him and the American State Bank. By deferring the time, and himself fixing the manner of payment, he could not defeat the plaintiff's present right to his commission. The case is controlled by *Fuday* v. *Gill*, 195 Mich. 613, in which this court said:

"A broker becomes entitled to his commission whenever he procures for his principal a party with whom he is satisfied and who actually contracts for the purchase of the property at a price acceptable to the owner (*Hubbard* v. *Leiter*, 145 Mich. 387; *McDonald* v. *Ortman*, 88 Mich. 645; *Whitaker* v. *Engle*, 111 Mich. 205; *Keys* v. *Johnson*, 68 Pa. 42); and he is not deprived of the right to his commission by the fact that the purchaser fails to carry out his contract (19 Cyc. p. 270); nor is he bound to wait until all deferred payments were paid and all agreements on the part of the purchaser complied with (*Morgan* v. *Keller*, 194 Mo. 663, 680 [92 S. W. 75]), and it is necessary to show an express agreement to defer payment of his commission to defeat his right of recovery after performance (*Hodgkins* v. *Mead*, 8 N. Y. Supp. 854, affirmed without opinion, 130 N. Y. 676 [29 N. E. 1035])."

The judgment will be reversed, with a new trial. Plaintiff will recover costs of this court.

STEERE, C. J., and MOORE, WIEST, STONE, BIRD, and SHARPE, JJ., concurred. FELLOWS, J., did not sit.