M. J. REITZ, Respondent, v. JENNIE W. OGLEBAY, Appellant.

In the Kansas City Court of Appeals, April 2, 1923.

1. BROKERS: Pleading: Petition Held to Sufficiently Charge That Plaintiff Was the Procuring and Efficient Cause of Sale of Real Estate Made by Owner. In an action to recover a broker's commission on the sale of real estate, where petition alleged that defendants, the owners of the property, engaged the plaintiff to procure a purchaser, that plaintiff advised and informed defendants that he had procured as a prospective purchaser a certain buyer, and that afterwards the defendants sold the property to

such buyer so procured by plaintiff, *held* to sufficiently charge that plaintiff was the procuring and efficient cause of the sale.

. 2. ——: **Sale: Procuring and Efficient Cause: The Question as to Whether Plaintiff Was Procuring and Efficient Cause of Sale, Held for Jury.** Where evidence showed that plaintiff disclosed to defendants the name of prospective purchaser and endeavored to bring the parties to an agreement as to price, and defendants treated direct with said purchaser so disclosed and thereafter effected a sale, the question as to whether the plaintiff was the procuring and efficient cause of the sale was for the jury.

3. ——: ——: ——: **Instructions: An Instruction as to Whether Broker Was Procuring and Efficient Cause of Sale Held Not Erroneous.** In an action to recover broker's commission, an instruction which followed the pleadings and proof and expressly told the jury that if sale of real estate was not effected or brought about as a result of the broker's efforts, they could not find for the plaintiff, was not erroneous, because it failed, in exact words, to require jury to find that plaintiff was the procuring and efficient cause of the sale.

4. ——: **Question of What Was a Reasonable Time Within Which to Procure Purchaser Held For the Jury.** In action by broker to recover commission where contract of employment was verbal and no time was specified in which purchaser was to be procured, and plaintiff's authority at the time of sale remained unrevoked, the question of what was a reasonable time within which to procure a purchaser was for the jury.

5. ——: **Instructions: An Instruction Submitting Question as to What Was a Reasonable Time in Which to Procure Purchaser Held Not to Broaden the Issues.** An instruction submitting to jury the question of what was a reasonable time within which broker should have procured purchaser, *held* not to broaden the issues.

6. **APPEAL AND ERROR: Issues of Fact on Conflicting Evidence Are For the Jury and Appellate Court is Not Authorized to Disturb Their Finding.** Where the evidence was conflicting on essential points, the issues of fact were for the jury and the appellate court cannot disturb their finding.

7. **BROKERS: Instructions: Verdict: In an Action by Broker For Commission on Sale of Real Estate a Verdict Rendered Against Owner of Undivided Interest Therein For Amount of Commission For Sale of Entire Property, Held Warranted and Instructions Authorizing Same Not Erroneous** Where petition alleged that the several defendants employed plaintiff to procure a purchaser and defendants filed their joint and several answers in substance de-

nying such allegation, an instruction for plaintiff authorizing a recovery of full commission against only one of the defendants, who owned a one-half interest in the property, was not erroneous, when read in connection with an instruction given by the court, on its motion, requiring the jury, before returning a verdict for plaintiff and against said defendant to find that contract of employment was made between plaintiff and such defendant for the sale, not of an undivided interest therein, but of all the property, and the verdict against said defendant is held to be properly authorized.

Appeal from the Circuit Court of Jackson County.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*Marley & Reed* for respondent.

*Harding, Murphy, Stinson & Tucker* for appellant.

ARNOLD, J.—This action was brought to recover a broker's commission on the sale of real estate. The suit was directed against Jennie W. Oglebay, Frank M. Oglebay, her husband, and their daughter, Mary Oglebay Perry, as defendants. At the close of plaintiff's evidence, the court sustained a demurrer as to defendant Mary Oglebay Perry, and at the close of all the evidence a peremptory instruction in favor of Frank M. Oglebay was given. A similar instruction asked in favor of Jennie W. Oglebay was refused. The verdict and judgment were for plaintiff in the sum of $1875 against defendant Jennie W. Oglebay. After unsuccessful motions for new trial and in arrest of judgment, defendant appeals.

The petition charges that on or about April, 1918, defendants Jennie W. Oglebay, Frank M. Oglebay and Mary Oglebay Perry, by and through Frank M. Oglebay as their agent, engaged plaintiff to procure a purchaser for the property at the northwest corner of Eleventh and Central Streets in Kansas City, Missouri; that he

did procure a prospective purchaser therefor and advised defendants that the said prospective purchaser was the American Hereford Cattle Breeder's Association, a corporation. The petition further charges that defendants thereupon did sell and convey to said Association the said real estate, at and for the price of $70,000 cash; that by reason thereof plaintiff is entitled to the usual and customary commission for procuring a purchaser therefor, and accordingly seeks judgment in the sum of $1875.

The answer is a general denial.

The testimony, while conflicting in many essential points, tends to show that Jennie W. Oglebay and Mary Oglebay Perry owned what was known as the Oglebay home place, located at the northwest corner of Eleventh and Central streets in Kansas City, Mo.; that in the winter of 1917-18, plaintiff, a real estate agent, was informed by the secretary of the American Hereford Breeders Association that that body was interested in the purchase of a site for a permanent home for the Association and were pleased with the Oglebay property for that purpose. Plaintiff, thereupon, called at the Oglebay home and told the Oglebays that he had a customer who, he thought, would be interested in buying the property and asked them what they wanted for it. They replied that they had lived there a good many years and were not anxious to sell, but if he could get them an offer of $75,000, they would consider it and pay him a commission thereon. In this conversation, Mrs. Oglebay told plaintiff that Mr. Oglebay looked after her affairs and that future dealings must be with him. The evidence is undisputed that plaintiff never talked to Mary Oglebay Perry who owned an undivided one-half interest in the property.

The plaintiff's evidence further shows that in the period following this interview, plaintiff took the matter up with a Mr. Kinser, secretary of the American Hereford Association, the man who already had suggested that they liked the property. Mr. Kinser asked plain-

tiff, first, to see if the property could be purchased for $50,000; then for $55,000, then for $60,000, and later on, for $65,000. These figures all were rejected by Mr. Oglebay who insisted that they must have $75,000.

There is testimony that plaintiff continued his efforts thereafter to secure an acceptable offer on the property, until sometime about March, 1919, when plaintiff discovered that the property had been sold to the above named Association for the sum of $70,000, and that the transfer thereof had been made. Plaintiff then demanded a commission on the sale and payment thereof was refused. This action followed, with the result above indicated.

In support of her appeal defendant charges, first, that the court erred in giving, of its own motion, instruction C-1 for the reasons, (a) that it authorized a recovery without requiring the jury to find that plaintiff was the procuring cause of the sale, and (b) that said instruction was broader than the issues raised by the pleadings. In this connection it is argued that "it is a matter of grave doubt whether plaintiff's petition stated a cause of action."

The petition alleges that defendants, the owners of the property in question, engaged the plaintiff "to procure a purchaser" for the real estate in question; that plaintiff, as such agent, advised and informed the defendants that he had procured as a prospective purchaser therefor the American Hereford Cattle Breeder's Association, and that afterwards the defendants sold the property "to the said . . . Association, the prospective purchaser so procured by the plaintiff, as aforesaid, all of the aforesaid real estate, at and for the price of $70,000, . . ." and "that by reason thereof this plaintiff is entitled to receive from defendants herein the usual and customary commission for procuring a purchaser for the aforesaid real estate," etc.

We are unable to agree with the learned counsel for defendant in his analysis of the petition. It must be

conceded that while the petition must charge that plaintiff was the procuring and efficient cause of the sale, there is no set formula by which such a charge shall be pleaded and it may be couched in any words which shall clearly convey the meaning and intent of such an allegation. The language of the petition quoted above we think successfully covers the requirements suggesed.

As stated above, plaintiff's testimony tends to show that plaintiff disclosed the name of the purchaser to defendants. In the case of Merton v. J. I. Case Co., 99 Mo. App. 630, l. c. 634, it is said:

"It is the well-settled rule of law in this State that where an agent introduces the purchaser or *discloses his name* to the seller and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner." Citing cases. [See also Gelatt v. Ridge, 117 Mo. 553, 560.]

The testimony on behalf of plaintiff tends to show that negotiations were entered into by defendants direct with an officer of the Hereford Breeders Association, that the sale was consummated and the deal closed. In Skirvin v. McKamey, 237 S. W. 858, to which our attention is called by defendant, this court held, l. c. 859:

"The ground upon which the trial court intimated that he would sustain the demurrer was that there was no evidence that the purchaser was ready, able, and willing to buy. Plaintiff sought to read authorities to the court presumably on the point that if defendant accepted the purchaser by entering into a contract with her, the question of whether the purchaser is ready, able, and willing to buy becomes immaterial. [Knisely v. Leathe, 256 Mo. 341, 372, 373, 166 S. W. 257; Wright v. Brown, 68 Mo. App. 577, 583; Pratt v. Irwin (Mo. App.) 189 S. W. 398, 399.]"

In Low v. Paddock, 220 S. W. 969, 972, it was held:

"Whether the broker is to 'introduce' a customer or to 'find' or 'procure' one, or whether he is to do these

things combined, his duties remain practically the same, as the words 'find,' 'procure' and 'introduce' are generally used synonymously in the making of such contracts." [Citing 4 R. C. L. 304.]

In the case at bar the charge is that plaintiff was employed to "procure a purchaser." Under the testimony of record to the effect that plaintiff disclosed to the defendants the name of the prospective purchaser and endeavored to bring the parties to an agreement as to price and that defendants treated direct with said purchaser so disclosed, and thereafter effected a sale, can it be said as a matter of law that plaintiff did not procure a purchaser, as the petition alleges? We think not.

Under the evidence presented, the question as to whether the plaintiff was the procuring and efficient cause of the sale was for the jury. We hold that instruction C-1, against which the criticism is directed, correctly presented the case in this respect and was not error because it failed, in exact words, to require the jury to find "that the plaintiff was the procuring and efficient cause of the sale." The instruction, given by the court on its own motion, covers the entire case and directs a verdict. It includes the hypothetical facts pleaded in the petition and directs the jury that if they find such facts to be true, they should find for plaintiff. But the instruction expressly tells the jury that even though Mrs. Oglebay may have employed plaintiff to sell the property for her and her daughter, nevertheless if the sale was not effected or brought about as a result of plaintiff's efforts, they should find for defendant. Finding, as we do, that the petition is good, the instruction following the pleadings and proof must be declared good. The instruction also follows the pleadings and proof of defendant.

Further it is charged against this instruction that it is broader than the issues raised by the pleadings because it authorizes a recovery on a theory entirely different from the issues raised by the pleadings. It is

urged that the petition, in substance, charged that defendants engaged plaintiff to procure a purchaser, and that he procured a prospective purchaser to whom defendants afterwards sold; that the instruction authorizes a recovery on the theory that defendants employed plaintiff to effect a sale of the property and that before the lapse of a reasonable time, they themselves sold it, without notice to him.

The testimony tends to show that the contract was a verbal one, and that no time was specified in which the purchaser was to be procured, and that plaintiff's authority remained unrevoked at the time of the sale. It is not disputed that under such a statement of facts plaintiff is entitled to a reasonable time in which to perform his part of the contract. It is said in Clark v. King, 238 S. W. 825, l. c. 827, a case decided by the St. Louis Court of Appeals:

"No time being specified in which to find a purchaser, the law would require one to be found within a reasonable time. This would depend upon the facts in the case and the intention of the parties. The defendant had the right, at all times before plaintiffs had procured a purchaser, to revoke their authority. The court instructed the jury that the plaintiffs had a reasonable time in which to find a purchaser, and what is a reasonable time depends upon the intention of the parties as gathered from all the facts and circumstances in evidence in the case, and if within a reasonable time as herein defined the plaintiffs failed to produce a purchaser ready, willing and able to purchase the land upon the terms mentioned in the contract, the defendant had the right to refuse to sell said land to the person produced by plaintiffs. We think the question as to whether or not the plaintiffs had procured a purchaser within a reasonable time was one of fact, and was properly left to the jury." [See also Morgan v. Keller, 194 Mo. 680, 92 S. W. 75.]

So, under the evidence in the case at bar, the question of what was a reasonable time was for the jury. The

instruction told the jury that if they believed from the evidence that plaintiff was employed by defendant, Mrs. Oglebay, to effect a sale "and plaintiff had a reasonable time, unless said employment was sooner terminated by defendant, Mrs. Oglebay, in which to effect a sale of said real estate to said Association at said price, . . . that it is for them to determine what was a reasonable time," etc. We hold that under the pleadings, the evidence and the law, the instruction did not broaden the issues and was proper.

As is usually the case in controversies of this character, the evidence was conflicting on essential points, and no matter what our opinion might be of the truth of such testimony on either side, the issues of fact are for the jury and we are not authorized to disturb their finding.

The only point remaining for our consideration is whether the court erred in giving instruction P-6, on behalf of plaintiff, authorizing recovery of full commission against Mrs. Oglebay who owned only a one-half interest in the property. It is urged by defendant that such an instruction was error. But in instruction C-1, given by the court on its own motion, the jury were required to find that plaintiff sought employment of Mrs. Oglebay to sell the property for her and her daughter, and that Mrs. Oglebay referred him to her husband, and that the husband told him Mrs. Oglebay and her daughter would sell the property for $75,000, and would pay him a commission if he would effect a sale to said Association. Instruction P-6 must be read in connection with said instruction C-1 in this regard, for it merely tells the jury what they may do in case they find for plaintiff. Instruction P-6 reads:

"The court instructs the jury that if they find the issue for the plaintiff, then they shall allow plaintiff as his compensation such a sum as will reasonably compensate him for his services, taking into consideration the usual and customary commissions paid to real estate

agents in Kansas City, Missouri, for procuring purchasers for such real estate."

The instruction does permit such a finding, and it only remains to be determined whether, under the pleadings and the proof such an interpretation of the law was error. The petition charges:

"That on or about April, 1918, the defendants, Jennie Oglebay, Frank M. Oglebay and Mary Oglebay Perry, by and through the said Frank M. Oglebay, engaged the plaintiff to procure a purchaser for the following described real estate, lying, being and situate in the County of Jackson, State of Missouri, to-wit:

"Lots Eight (8), Nine (9), Ten (10), Eleven (11), and the south one-half (1/2) of Lot Seven (7), all in Block Fifteen (15), in Ashburn's Addition in Kansas City, Missouri, then and there owned by defendants."

It is apparent that plaintiff's claim is that the alleged contract to procure a purchaser included the sale of the entire property. There is nothing in the petition which, even by inference, may be construed as a suit against each individual defendant for a commission for the sale of his or her undivided interest. Though the answers of defendants are not set out *in haec verba*, yet the record does show that "on June 5, 1919, and within the time provided by law, defendants, including this appellant, filed their joint and several answers, in substance denying each and every allegation in plaintiff's petition contained."

Without further light upon these "joint and several answers" we must accept them as meaning that defendants, jointly and severally, filed general denials to the allegations of the petition. Plaintiff's evidence tends to show that the contract was made with the appealing defendant, through her husband, for the sale of all the property—not an undivided interest therein. The answers deny that there was any contract made with plaintiff for the sale of the property. There was substantial

evidence supporting plaintiff's contention which the jury evidently believed. We fail to find, therefore, that instruction P-6 was erroneous in the respect charged.

The judgment is affirmed. All concur.