BOWMAN *v.* MYERS.

1. BROKERS—VALIDITY OF BROKER'S LICENSE MAY NOT BE COL-LATERALLY ATTACKED.

> The validity of a license issued to partners as real estate brokers by the securities commission under Act No. 306, Pub. Acts 1919, may not be collaterally attacked in an[1] action involving their right to a commission on the sale of a farm, since, in the absence of a showing to the

---

[1]Brokers, 9 C. J. § 65.

contrary, it must be presumed that the commission in issuing said license did its duty and acted upon a proper application.

2. SAME — COMMISSIONS — BROKERS ENTITLED TO COMMISSION ON ACCEPTANCE OF BUYER.

Under a written contract by which the owner of a farm agreed to send prospective purchasers to certain brokers, who were to show the farm, and in case a sale was made he was to pay them one per cent. of the sale price, they were entitled to their commission on the seller's acceptance of a buyer whom he had sent to them, and it is immaterial that the buyer made false representations as to his financial ability, where the brokers had no knowledge thereof and took no part therein.

Error to Isabella; Hart (Ray), J.     Submitted January 4, 1928.     (Docket No. 50.)     Decided February 14, 1928.

Assumpsit by Jesse A. Bowman against Charles J. Myers, William J. Cooper, and Hugh Watson, copartners as Myers, Cooper & Watson, for moneys collected for plaintiff.     Judgment for defendants. Plaintiff brings error.     Affirmed.

*Dodds & Dodds,* for appellant.
*Virgil W. McClintic,* for appellees.

Plaintiff resides at Milwaukee, Wisconsin.     He was the owner of a large and valuable farm in Isabella county.     Defendants were partners but had not filed with the county clerk the certificate required by Act No. 164, Pub. Acts 1913 (2 Comp. Laws 1915, § 6354 *et seq.*), although after the transaction here involved and before this suit was brought they did comply with its provisions (see Act No. 265, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 6359]).     They were authorized by the Michigan securities commission to act as real estate brokers under the provisions of Act No. 306,

---

[2]Brokers, 9 C. J. § 67; 44 L. R. A. 595; 4 R. C. L. 303; 1 R. C. L. Supp. 1112; 4 R. C. L. Supp. 261; 5 R. C. L. Supp. 236.

Pub. Acts 1919 (Comp. Laws Supp. 1922, § 6897 [24] *et seq.*). Defendants seem to have looked after plaintiff's farm for him, collecting rents, selling produce, etc. Plaintiff was desirous of selling his farm and on July 26, 1924, wrote defendants:

"What will be your charges to assist me in the sale, by taking charge of prospective buyers and showing them the farm and use your efforts to effect a sale?"

Defendants replied offering to perform the services for one per cent. of the sale price or $25 per prospect sent to them. Plaintiff replied:

"I accept your proposition of one per cent. on any sale or trade I make on the Michigan farm."

We need not quote further from the correspondence as it is conceded that the statute of frauds is satisfied.

In December following plaintiff entered into an agreement with one Panseram to sell him the farm for $50,000, and the contract was placed in escrow subject to Mr. Panseram's examination of the farm. He came on with a letter of introduction to defendants and was shown the farm by them. He was apparently satisfied, and shortly afterwards plaintiff wired and also wrote defendants that the farm was sold. The contract was delivered from escrow, and Panseram moved on the farm. In midsummer plaintiff claims to have learned that Panseram had made fraudulent representations as to his financial ability and plaintiff repossessed himself of the farm. It is conceded that defendants knew nothing of such misrepresentations and had nothing to do with them. Defendants were permitted to offset their commission in this suit brought against them and their right so to do is the only question presented on this record; all other items of the dealings of the parties being agreed upon.

FELLOWS, J. (*after stating the facts*). Plaintiff's counsel do not contend that defendants' failure to com-

ply with Act No. 164, Pub. Acts 1913, makes their contract with plaintiff invalid. They concede, and properly so, that the amendment to the act (Act No. 265, Pub. Acts 1919) permits defendants to assert their contract, provided, as was here done, the proper certificate was filed before suit was brought. What they contend is this: That the issuance of a license to them as brokers by the Michigan securities commission acting under Act No. 306, Pub. Acts 1919, without their compliance with another act, the act of 1913, was invalid, hence they have no valid license as brokers and any contract they entered into as such was in the face of a penal statute and void, and that the validity of defendants' license as brokers is open to assault for this reason in this proceeding. The defendants had been authorized by the Michigan securities commission to act as real estate brokers, and held their licenses as such for all the period during which plaintiff had dealings with them as such. We do not think the propriety of the issuance of such license is open to collateral attack. In the absence of any evidence or claim to the contrary, we must assume that the Michigan securities commission did its duty and acted upon a proper application before it. Upon principle the case of *International Harvester Co.* v. *Eaton Circuit Judge,* 163 Mich. 55 (30 L. R. A. [N. S.] 580, Ann. Cas. 1912A, 1022), is analogous. In that case the harvester company, a foreign corporation, had been authorized by the secretary of State to do business in Michigan. It brought suit in the Eaton circuit to recover a balance due it upon business it was authorized by its charter to do. The circuit judge had held that in defense of the suit it might be shown that it was violating another act of the State, *i. e.,* the anti-trust act, and an order had been entered along such lines and was before this court for review. It was held that such defense was not available and it was said:

"If the articles of the relator state a purpose for which the statute authorizes a corporation to be formed, then, if other requirements of the law are complied with, it is not only a corporation *de facto,* but it is a corporation *de jure.*      In such a case the illegality of its organization cannot be attacked at all, and it can only be shown that the corporation is guilty of a misuser of its corporate franchises by attempting, under the guise of a legal corporate existence, to conduct a business not authorized by its charter, or in a manner contrary to law, or some principle of public policy; and this by a direct proceeding to test its right."

See, also, *Wyandotte Electric-Light Co.* v. *City of Wyandotte,* 124 Mich. 43; *Detroit City Ry.* v. *Mills,* 85 Mich. 634; *Attorney General* v. *Bruce,* 213 Mich. 532.

The other objection to defendants' right to a commission is that Panseram made false representations as to his financial ability, and that plaintiff was induced to enter into the contract by his fraud.   There is no claim that defendants knew of or had any connection with such fraud; indeed, it was conceded they did not.   It will be noted that defendants did not agree to procure a purchaser ready, willing, and able to buy; their services were not as full and complete as those usually performed by brokers; and it should also be noted that plaintiff selected his own "prospects;" the services defendants were to perform under their agreement were to show the farm to such "prospects" as were sent to them by plaintiff and to encourage them to purchase the farm.   Plaintiff sent to defendants one Panseram and, after he had looked over the farm, the agreement then in escrow was delivered and became an agreement of sale and purchase between plaintiff and Panseram.   Plaintiff accepted Panseram as a purchaser and wired and wrote defendants that the farm was sold to him.   When plaintiff himself dealt with Panseram, accepted him as

a purchaser and contracted with him for the sale of the farm, and defendants had performed their contract by showing the farm to him and encouraging him in its purchase, they had earned their commission, and their right to it was not defeated by Panseram's financial inability to perform, or his fraudulent representations to plaintiff of which defendants had no knowledge and in which they took no part. *Fuday v. Gill*, 195 Mich. 613; *Rice-Wray v. Palma*, 216 Mich. 324; *Smith-Burns Investment Co. v. Jones*, 240 Mich. 89; *Francis v. Baker*, 45 Minn. 83 (47 N. W. 452).

The judgment will be affirmed.

NORTH, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.

Chief Justice FLANNIGAN and the late Justice BIRD took no part in this decision.